UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 20-1253(DSD/HB)

Craig Parmer and Mark A. Laurance,
individually and on behalf of all
others similarly situated,

            Plaintiffs,

v.                                                    **ORDER**

Land O'Lakes, Inc.; The Board of
Directors of Land O'Lakes, Inc.;
Land O'Lakes, Inc. Retirement Plan
Committee; and John Does 1-30,

            Defendants.


        Mark K. Gyandoh, Esq. and Capozzi Adler, 312 Old Lancaster
        Road, Merion Station, PA 19066 and Vernon J. Vander Weide,
        Esq. and Lockridge Grindal Nauen PLLP, 100 Washington Ave
        South, Suite 2200, Minneapolis, MN 55401, counsel for
        plaintiffs.

        Christopher J. Boran, Esq. and Morgan, Lewis & Bockius LLP,
        77 West Wacker Drive, Suite 500, Chicago, IL 60601 and Stephen
        P Lucke, Esq. and Dorsey & Whitney LLP, 50 South 6th Street,
        Suite 1500, Minneapolis, MN 55402, counsel for defendants.


        This matter is before the court upon the motion of defendants

Land O'Lakes, Inc. (Company), the Board of Directors of Land

O'Lakes, Inc. (Board), Land O'Lakes, Inc. Retirement Plan

Committee (Committee), and John Does 1-30 (collectively,

defendants)[1] to dismiss for lack of jurisdiction and failure to

state a plausible claim. Based on a review of the file, record,

_____

        [1] The court will refer to defendants collectively unless a
finer distinction is required.

and proceedings herein, and for the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

This Employee Retirement Income Security Act of 1974 (ERISA) dispute arises out of defendants' administration and maintenance of the Land O'Lakes Employee Savings & Supplemental Retirement Plan (Plan). Plaintiffs Craig Parmer and Mark Laurance are former employees of Land O'Lakes who participated in the Plan during their employment and enrolled in three of the Plan's investment options. Compl. ¶¶ 13-15; Glenn Decl. ¶ 20. Defendants are the Plan's fiduciaries. Id. ¶¶ 1, 17, 18-21. The Board, in its fiduciary capacity, appointed members to the Committee and monitored the Committee's actions and Plan investments and exercised discretionary authority over Plan assets. Id. ¶¶ 22-23, 25-26.

## I.   The Plan

The Plan is a defined-contribution retirement plan under which participants can contribute a percentage of their eligible compensation each year, and the Company matches the contributions depending on each employee's start date. Id. ¶¶ 1, 30, 33-36. Plaintiffs allege that the Company enjoyed significant benefits, including tax and cost savings, given the size of the Plan. Id. ¶¶ 37-39.

In 2018, the Plan offered participants twenty-eight investment options, including twenty-two mutual funds, one collective trust, two Wells Fargo Short-Term investments, two stable value funds, and one separately managed account composed of several common stocks, including various T. Rowe Price (TRP) target date funds.[2] Id. ¶ 40. The Plan's assets for all funds at the end of 2018 were over $1.4 billion. Id. ¶ 42. Administrative expenses were charged to participant accounts on a monthly basis, which included expenses to pay for "the Plan's website and call center, producing and mailing quarterly statements, and complying with government regulations." Id. ¶ 43.

## II. Breach of Fiduciary Duties

Plaintiffs allege that defendants breached their fiduciary duties by not acting in the best interests of the Plan participants as mandated by ERISA. Id. ¶¶ 51-59. Specifically, plaintiffs assert that defendants breached their fiduciary duties by (1) failing to investigate and select lower cost alternative funds, (2) failing to monitor or control the Plan's recordkeeping

---

[2] The parties dispute how many Plan investment options were available to participants. Compare Gyandoh Decl. Ex. A, at 4, ECF No. 37-1 (identifying twenty-eight Plan investment options from the Plan's 2018 Form 5500), with Glenn Decl. Ex. 5, at 5-7, ECF No. 25-5. For the purposes of this motion, the court will accept the Plan investment options alleged in the complaint as true. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (holding that factual assertions are accepted as true and inferences are drawn in favor of the nonmoving party).

expenses, and (3) allowing their recordkeeping affiliates to directly benefit from the Plan at the expense of their participants. Id. ¶ 138.

## A.   Failure to Investigate and Select Lower Cost Alternative Funds

Plaintiffs allege that defendants imprudently selected and maintained funds that wasted Plan assets because of unnecessary costs. Id. ¶ 68. Plaintiffs use a combination of expense ratios, or the "measure of what it costs to operate a fund expressed as a percentage of its assets," and data from other available funds to support this allegation. Id. ¶ 71. Plaintiffs use four different benchmarks to plead that defendants breached their duty of prudence.

First, plaintiffs allege that defendants offered Plan funds with excessive fees even though there were "comparable" alternatives with lower fees. Id. ¶¶ 68-76. Plaintiffs compare eighteen of the Plan's investment options' expense ratios to median expense ratios in "similar plan categories."[3] All of the Plan's investment options were above the median expense ratio when compared within "the same category." Id. ¶¶ 74-76.

---

[3] Plaintiffs include median expense ratio data from a 2016 report by the Investment Company Institute (ICI Study). See BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2016 at 62 (June 2019) available at https://www.ici.org/pdf/19_ppr_dcplan_profile_401k.pdf.

Second, plaintiffs allege that, because of the size of the Plan, defendants should have invested in the lowest cost share class available.  Id. ¶¶ 77-80.  Using 2020 expense ratios, plaintiffs allege that the Plan's funds are more expensive than their identical institutional class, or "I-Class," counterparts, without countervailing benefits.  Id. ¶¶ 80, 85.  Plaintiffs allege that defendants knew or should have known that cheaper share classes were available and should have transferred the Plan's funds into those investments.  Id. ¶¶ 81-87.

Third, plaintiffs allege that defendants failed to investigate the availability of collective trusts, which are typically more cost effective.  Id. ¶¶ 88-96.

Fourth, plaintiffs allege that defendants failed to offer lower cost "passively managed" and "actively managed" funds.[4]  Id. ¶¶ 97-109.  Plaintiffs assert that the Plan's funds' expense ratios were higher than comparable funds without a high risk/return.  Id. ¶¶ 101-05.  In other words, the Plan paid more in expenses but did not see higher returns in exchange.  Additionally, plaintiffs allege that defendants cannot justify selecting actively managed funds over passively managed funds because actively managed funds

---

[4] Actively managed funds use "professional investment managers [to] try to beat the market through picking individual investments," and passively managed funds, such as index funds, try to mimic a market index.  Davis v. Wash. Univ. in St. Louis, 960 F.3d 478, 484 (8th Cir. 2020).

5

do not perform as well long term, are less efficient, are more expensive, and have higher risk with lower returns.  Id. ¶¶ 106-07, 109.

**B.   Failure   to   Monitor   Recordkeeping/Administrative Expenses**

Plaintiffs also allege that defendants failed to prudently monitor recordkeeping costs incurred by Alight Solutions, one of the Plan's recordkeepers, in breach of their fiduciary duty.  Id. ¶¶ 114-31.  Specifically, plaintiffs allege that defendants failed to: explore other providers to see if there was a more cost effective option, id. ¶ 122, monitor Alight's exorbitant fees, id. ¶¶ 122-27, and negotiate lower fees given the size of the Plan, id. ¶¶ 127-31.

**C.   Relationship with Financial Engines**

Defendants "partner[ed]" with Financial Engines, which "provides independent, objective advice from unbiased experts, quarterly retirement updates, online account monitoring to help participants stay on track and a personalized plan."  Id. ¶ 111. Between 2014 and 2018, participants paid $5.1 million dollars to Financial Engines in "advice fees" and "professional management fees," over half of which Financial Engines remitted to Alight and Hewitt Associates, the Plan's recordkeepers.  Id. ¶¶ 112-13. Plaintiffs allege that defendants breached their duty of loyalty

by entering into this arrangement with Financial Engines to the participants' detriment.  Id. ¶¶ 132-34.

## III. This Lawsuit

On May 26, 2020, plaintiffs filed this putative class action alleging that defendants breached their fiduciary duties of loyalty and prudence under ERISA through the acts or inattention set forth above.  Id. ¶¶ 135-41.  Plaintiffs also assert that the Company and the Board failed to adequately monitor the Committee and other related fiduciaries.  Id. ¶¶ 142-48.  Plaintiffs seek class certification, declaratory relief, equitable relief, and damages.  Id. ¶ 149.  Defendants now move to dismiss the complaint for lack of subject matter jurisdiction and failure to state a plausible claim.


## DISCUSSION

## I.   Standing

### A.   Standard of Review

A court must dismiss an action over which it lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).  In a facial challenge under Rule 12(b)(1), the court accepts the factual allegations in the pleadings as true and views the facts in the light most favorable to the nonmoving party.  See Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008); see also Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) ("[T]he

7

nonmoving party receives the same protections [for facial attacks under Rule 12(b)(1)] as it would defending against a motion brought under Rule 12(b)(6).") (citation omitted).  As a result, the court limits its inquiry to the pleadings, matters of public record and materials necessarily embraced by the pleadings.  See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (listing materials court may consider in a 12(b)(6) challenge); Osborn, 918 F.2d at 729 n.6.   Accordingly, the court may consider the individual Plan retirement account statements for both named plaintiffs for the purposes of determining standing.  See Glenn Decl. ¶ 20.

**B.  Analysis**

Plaintiffs challenge eighteen of the Plan's twenty-five investment options, even though they only enrolled in three of those options.  Defendants argue that plaintiffs lack standing to challenge investment options in which they were not enrolled because they do not have a particularized and concrete injury relating to those options.  Plaintiffs respond that they need not personally invest in each fund to have standing because they suffered overall injury from defendants' fiduciary breaches and are entitled to bring a class action suit in a representative capacity under 29 U.S.C. § 1132(a)(2).

The court finds that plaintiffs have standing to challenge the entire Plan.  To establish standing, a plaintiff must show

injury in fact.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  A plaintiff must allege (1) an injury, (2) "fairly traceable to the defendant's alleged conduct," that is (3) "likely to be redressed by the requested relief."  Allen v. Wright, 468 U.S. 737, 751 (1984).

In Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 593 (8th Cir. 2009), the Eighth Circuit Court of Appeals held that the plaintiff had standing to challenge an entire retirement plan even though plaintiff did not enroll in all of the challenged investment options.  Id.  The court explained that the plaintiff adequately alleged that his individual account suffered due to defendants' breach of their fiduciary duties.  Id. at 592.  Once the plaintiff properly pleaded an injury under the plan, the court reasoned, he was allowed to "proceed under § 1132(a)(2) on behalf of the plan or other participants" even though such allegations "sweep[] beyond his own injury."  Id. at 593. The court finds that Braden is squarely and point and is therefore dispositive, whereas defendants' authority is inapposite.

In Thole v. U.S. Bank N.A., 140 S. Ct. 1615 (2020), on which defendants heavily rely, the United States Supreme Court held that the plaintiffs lacked standing to challenge a defined-benefit plan because their monthly benefits would not change even if they prevailed.  Id. at 1619.  The Court expressly noted that "[o]f decisive importance to this case, the plaintiffs' retirement plan

9

is a defined-benefit plan, not a defined-contribution plan." <u>Id.</u> at 1618.  The Court explained that retirees under a defined-benefit plan receive fixed payments each month that do not fluctuate with the plan's value or the plan fiduciaries' investment decisions. <u>Id.</u>  By contrast, retirees' benefits in a defined-contribution plan, as here, are "tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." <u>Id.</u>

As a result, the court finds, consistent with <u>Braden</u>, that plaintiffs have standing to challenge all of the investment options under the Plan.

**II.  Adequacy of the Complaint**

   **A.    Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Braden</u>, 588 F.3d at 594 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  <u>See</u> <u>Twombly</u>, 550

U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim.  Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

"[D]ocuments necessarily embraced by the complaint ... are not matters outside the pleading" and may be considered during the motion to dismiss.  Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012).  A document is necessarily embraced by the pleading if its "contents are alleged in a complaint and whose authenticity no party questions, but [it is] not physically attached to the pleading."  Id.  The court therefore considers publicly available fund prospectuses, the Plan's 2018 Form 5500, the 401k Averages Book, and the ICI Study.[5]  See, e.g., Meiners v. Wells Fargo & Co., 898 F.3d 820, 823 (8th Cir. 2018) (holding that prospectuses not attached to the complaint are necessarily embraced by the pleadings); Krueger v. Ameriprise Fin., Inc., No. 11-CV-02781 SRN/JSM, 2012 WL 5873825, at *3, *10 (D. Minn. Nov. 20, 2012) (considering the ICI report to determine whether plaintiffs plausibly alleged a breach of fiduciary duty claim).

---

[5] Defendants attach other documents, such as disclosure forms, to dispute the facts alleged in the complaint.  The court finds it improper to consider these documents at this time because they present factual disputes appropriate for resolution under a summary judgment motion.

**B.   Analysis**

Plaintiffs assert that defendants breached their fiduciary duties under 29 U.S.C. § 1104.  In order to state a claim under § 1104, plaintiffs must show that defendants (1) acted as fiduciaries, (2) breached their fiduciary duties, and (3) thereby caused a loss to the Plan.  <u>Braden</u>, 588 F.3d at 594 (citations omitted).

At issue here is whether plaintiffs have plausibly alleged that defendants breached their fiduciary duties under ERISA by (1) failing to investigate and select lower cost alternative funds, (2) failing to monitor or control the Plan's recordkeeping expenses, and (3) allowing their recordkeeping affiliates to directly benefit from the Plan at the expense of participants.

ERISA imposes the duties of loyalty and prudence on fiduciaries, which requires them to act "solely in the interest of [plan] participants and beneficiaries" and to carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  <u>Id.</u> at 595 (citing 29 U.S.C. § 1104(a)(1)).  The prudent person standard "is an objective standard ... that focuses on the fiduciary's conduct preceding the challenged decision."  <u>Id.</u> (citation omitted).  When evaluating whether the fiduciary's conduct was

12

prudent, the court "focuses on the process by which it makes its decisions rather than the results of those decisions." Id. (citations omitted).

At the pleading stage, the complaint need only allege enough "to infer from what is alleged that the process is flawed." Id. at 596. The complaint does not need to "directly address[] the [actual] process by which the [p]lan was managed." Davis v. Wash. Univ. in St. Louis, 960 F.3d 478, 483 (8th Cir. 2020) (quoting Braden, 588 F.3d at 596). "[C]ircumstantial allegations about [the fiduciary's] methods based on the investment choices a plan fiduciary made can be enough." Id. (quoting Meiners v. Wells Fargo & Co., 898 F.3d 820, 822 (8th Cir. 2018)) (internal quotation marks omitted).

For an investment-by-investment challenge, it is not enough to allege "that costs are too high, or returns are too low." Davis, 960 F.3d at 484 (citation omitted). The complaint "must provide a sound basis for comparison[,] a meaningful benchmark." Meiners, 898 F.3d at 822. Different shares of the same fund may serve as a meaningful benchmark, but it is not enough to allege that "cheaper alternative investments with some similarities exist in the marketplace." Id. at 823. Comparing funds with different investment strategies, such as passively managed and actively managed funds, are not meaningful benchmarks because "[t]hey have different aims, different risks, and different potential

13

rewards ....”  <u>Davis</u>, 960 F.3d at 484.  Plausibility depends on the “totality of the specific allegations in [each] case.” <u>Meiners</u>, 898 F.3d at 822 (citation omitted).

### 1.  <u>Failure to Investigate and Select Lower Cost Alternative Funds</u>

Plaintiffs allege that defendants breached their fiduciary duties by selecting and maintaining funds that wasted Plan and participants’ assets due to unnecessary costs.  Plaintiffs base their allegation on four different theories: (1) defendants maintained funds that had excessive fees based on the comparison of expense ratios from the ICI Study; (2) defendants should have invested in the lowest cost share class available due to the Plan’s size; (3) defendants failed to investigate the availability of lower cost collective trusts; and (4) defendants failed to select lower cost passively managed and actively managed funds.

### a.  <u>Excessive Fees</u>

Plaintiffs compare the expense ratios of the Plan’s funds to the median expense ratios in comparable funds in similarly sized plans.  This comparison demonstrates that all of the Plan’s investment options were above “comparable” median expense ratios of similarly sized plans.  Defendants respond that the median expense ratios from the ICI Study are not meaningful benchmarks because the ICI Study does not distinguish between actively and passively managed accounts.

14

The court agrees with defendants and finds that the ICI Study median expense ratios are not meaningful benchmarks.  Although the ICI Study considers the size of the Plan and the "category" of fund, it fails to differentiate between passively and actively managed funds.  See BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2016 at 51, 62, 64 (June 2019) (including both passively managed and actively managed funds in the data used to calculate the median expense ratio). Therefore, plaintiffs' allegations are insufficient to plausibly allege imprudence.  See Meiners, 898 F.3d at 823 (holding that cheaper alternative investments with some similarities are not meaningful benchmarks); see also Davis v. Salesforce.com, Inc., No. 20-CV-01753-MMC, 2020 WL 5893405, at *3 n.9 (N.D. Cal. Oct. 5, 2020) (rejecting the ICI Study median expense ratio comparison under the Meiners and Davis meaningful benchmark analysis).

### b.   **Failure to Select Lower Fee Share Classes**

Plaintiffs next allege that defendants should have invested the Plan in the lowest cost share class available based on the Plan's size.  Plaintiffs use 2020 expense ratios to demonstrate that the funds' expenses were excessive vis-à-vis their identical institutional class, or "I-Class," counterparts.  Plaintiffs argue that defendants knew or should have known that cheaper share classes were available, should have transferred the Plan's investments at the earliest opportunity, and either failed to

15

leverage its large asset pool to obtain institutional shares or were otherwise negligent. Defendants argue that the TRP fund prospectuses show that the I-Class shares were not available until late 2015 and that it was prudent in keeping the Investor Shares over the I-Class shares.[6]

The court finds that plaintiffs have adequately pleaded that defendants were imprudent to not investigate I-Class shares sooner. As noted, the court must accept plaintiffs' allegations as true and may only consider documents necessarily embraced by the complaint. The Plan's Form 5500, which reflects that the disputed TRP funds were not collective investment trust or I-Class versions until after 2018, is necessarily embraced by the complaint. The Plan's fund prospectuses reveal that I-Class shares were not available until late 2015. This leaves a period between 2015 and 2018 where the Plan's TRP investment options were not allegedly prudent I-Class or collective trust versions.

Further, the complaint provides a meaningful benchmark for comparison. Different shares of the same fund can be a meaningful benchmark for comparison. See Meiners, 898 F.3d at 823 (discussing Braden and appropriate benchmarks). Braden is once again instructive. In Braden, the court held that the plaintiff

---

[6] The court declines to address defendants' argument about when it offered Investor share class funds because it is a factual dispute raised by documents not necessarily embraced by the pleadings.

satisfied pleading requirements when the complaint alleged that the defendant failed to obtain institutional class shares of identical mutual funds. 588 F.3d at 595-96. Plaintiff alleged that the plan had a large pool of assets, that the 401(k) marketplace was competitive, and that retirement plans of large size had the ability to obtain institutional class shares. Id. at 595. The plaintiff also alleged that, despite the ability to obtain institutional class shares, the plan offered retail class shares, which charged higher fees for the same return on investment. Id.

Similarly, in Davis, the plaintiff pleaded that the defendant's asset pool was large, the marketplace was highly competitive, and the defendant had the ability to offer more institutional share classes. 960 F.3d at 483. Taken together, the court held that the plaintiff pleaded a plausible claim for breach of the duty of prudence because it alleged that the defendant either did not use the Plan's size to negotiate and obtain institutional share classes or failed to pay close attention for available lower cost alternatives. Id.

Here, like in those cases, plaintiffs allege that the Plan has a large pool of assets, that large plans have the ability to obtain institutional class shares, and that institutional class shares are no different from Investor class shares other than

17

cost.[7]  Despite the ability to obtain institutional class shares, the Plan continued to offer Investor class shares in 2016, 2017, and 2018.  Plaintiffs further allege that the Plan did not receive any additional benefits.  Plaintiffs plead that defendants failed to leverage the Plan's large pool of assets to obtain "I-Class" shares or was simply not paying attention.

Defendants respond that they were prudent in keeping Investor class shares because they were able to secure lower overall fees for participants by applying a portion of the expense ratio to administrative fees.[8]  Accordingly, defendants argue that there can be no plausible inference of fiduciary misconduct.  The court disagrees.  Plaintiffs are not required to "rule out every possible lawful explanation for the conduct he challenges ...." Braden, 588 F.3d at 597.  Indeed, if plaintiff were to have to explain every alternative possibility, it "would invert the principle that the complaint is construed most favorably to the nonmoving party ...." Id. (internal quotation marks and citations omitted).  The court must, after all, construe the complaint to draw inferences in plaintiffs' favor.  Id. at 595.  Plaintiffs allege that the

---

[7]  Plaintiffs allege that investor share class funds had expense ratios between 16% and 37% higher than their institutional share class equivalents based on 2020 expense ratios.

[8]  The fund prospectuses provide that Investor share classes "may make administrative fee payments at an annual rate of up to 0.15% of the class' average daily net assets."  See, e.g., ECF No. 25-8 Ex. 8, at 13.

institutional share class was less expensive than the Investor share class and that the Plan did not receive any other benefits by choosing the Investor share class funds. These allegations draw a plausible inference that defendants failed to negotiate for a better deal or failed to realize they should have done so. As a result, plaintiffs have pleaded a sufficient breach of prudence claim based on the availability of institutional class shares.

### c.    Failure to Investigate Availability of Lower Cost Collective Trusts

Plaintiffs also allege that defendants breached their fiduciary duty by failing to investigate converting funds into collective trusts despite their availability and cost effectiveness. The complaint alleges that collective trusts available to the Plan by 2018 had lower expense ratios than their counterparts.

The court finds that plaintiffs have not adequately pleaded that collective trusts are a meaningful benchmark to compare to mutual fund "equivalents." As noted, it is not enough to allege that costs are too high, which is all plaintiffs have done here. Davis, 960 F.3d at 484 (citation omitted). Plaintiffs have failed to provide a basis for a meaningful comparison between the Plan's mutual funds and available collective trusts.

In any event, courts have routinely found that collective investment trusts are not meaningful comparators to mutual funds.

See, e.g., Davis v. Salesforce.com, Inc., No. 20-CV-01753-MMC, 2020 WL 5893405, at *6 (N.D. Cal. Oct. 5, 2020) (finding that the complaint failed to allege breach of fiduciary duty based on a comparison between mutual funds and collective trusts); Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 212 (D. Mass. 2020) ("[T]here is no fiduciary duty to investigate alternatives to mutual funds."); White v. Chevron Corp., No. 16-CV-0793-PJH, 2016 WL 4502808, at *12 (N.D. Cal. Aug. 29, 2016) (holding that comparisons of mutual funds to collective trusts are "apple-to-oranges" comparisons). Among other reasons, collective trusts are subject to unique regulatory and transparency features that make a meaningful comparison impossible. See Moitoso, 451 F. Supp. 3d at 212; White, 2016 WL 4502808, at *12. Accordingly, plaintiffs have not pleaded a breach of fiduciary duty predicated on a comparison of mutual funds with collective trusts.

### d. Failure to Select Lower Cost Passively Managed and Lower Cost Actively Managed Funds

Plaintiffs next allege that defendants failed to select readily available lower cost passively managed and actively managed funds. Additionally, plaintiffs allege that defendants were imprudent in choosing actively managed funds over passively managed funds because actively managed funds are more expensive, higher risk, do not perform as well long term, and are less efficient. Defendants again argue that plaintiffs have not pleaded

a meaningful benchmark for comparison and that a fiduciary is not required to choose the best performing fund to meet its duty.

The court finds that the passively managed and actively managed funds identified in the complaint are not meaningful benchmarks. Again, it is not enough to allege that costs are too high or that cheaper alternative investment with some similarities exist. Meiners, 898 F.3d at 823. And a comparison between passively managed and actively managed funds is not meaningful because they have different investment strategies, with "different aims, different risks, and different potential rewards ...." Davis, 960 F.3d at 484.

Here, the complaint makes "apples to oranges" comparisons. First, plaintiffs challenge twelve TRP target date funds that use a blended strategy of primarily active management with passive management. See Glenn Decl. Ex. 8, ECF No. 25-8, at 24-26 (describing the underlying investments in the TRP target date funds from the prospectus). The complaint compares these blended strategy funds to wholly passive Fidelity and Vanguard funds and wholly active American funds. See Compl. ¶ 101. Moreover, each fund's prospectus confirms that each fund holds different concentrations of bonds, has varying numbers of underlying funds, and uses various glide path strategies. See, e.g., Meiners, 898 F.3d at 823, n.2 (noting that different allocation of bonds indicates different investment strategies). These different

21

strategies, aims, risks, and potential rewards do not provide meaningful benchmarks.

Second, the complaint challenges five non-target date funds. The complaint compares the expense ratios of the non-target date funds to the expense ratios of either one passively managed fund or one actively managed fund, or both.  These comparators, too, fail to be meaningful benchmarks.  The complaint makes conclusory allegations that the comparator funds are meaningful because they are of the same "investment type" and are either passively or actively managed.[9]  Meiners makes clear, however, that "by merely finding a less expensive alternative fund or two with some similarity," plaintiffs could avoid the meaningful benchmark requirement altogether.  898 F.3d at 823.

Plaintiffs have not pleaded how their comparators have similar asset allocation or investment strategies, and a simple comparison of the non-target fund prospectuses and their actively managed comparators reveal glaring differences beyond each fund's investment type and management style.  For example, the PIMCO Total Return Fund invested in foreign currencies, high yield securities, and derivative instruments, but its comparator, Johnson Institutional Core Bond fund, maintains no derivatives, no high-

---

[9] At least four of the challenged non-target date funds are actively managed, which makes the passively managed fund comparator not meaningful.  See Davis, 960 F.3d at 484.

yield securities, and no foreign currency exposure. Another example is the comparison between the TRP Balanced Fund, which uses bond-heavy weighting, and the American Balanced fund, which uses equity-heavy bonding. In sum, plaintiffs do not meet the plausibility requirement by alleging that one fund with some similarities had a lower expense ratio. See Braden, 588 F.3d at 596 ("[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund.") (citation and internal quotation marks omitted).

Third, plaintiffs allege that defendants were imprudent because they should have offered passively managed investment options over actively managed investment options. This theory is not viable. Although analysts continue to debate the merits of passively managed funds versus actively managed funds, they recognize that it is not imprudent for a fiduciary to offer both, which defendants do here. See Davis, 960 F.3d at 484-85. Plaintiffs have not sufficiently pleaded that defendants were imprudent by failing to select lower cost actively managed or passively managed funds.

In sum, plaintiffs may proceed on their breach of prudence claim premised on the availability of lower cost institutional share classes available to the Plan, but they may not proceed on the other theories alleged in the complaint.

23

### 2. __Recordkeeping Compensation__

Plaintiffs allege that defendants failed to prudently manage and control the Plan's recordkeeping costs. Plaintiffs assert that, because there are many participants in the Plan and the marketplace for recordkeeping is competitive, defendants imprudently paid their recordkeepers and failed to monitor and request recordkeeper compensation information under a revenue sharing scheme. Defendants argue that the recordkeeping fees were not excessive because they were contractually capped and, again, the complaint does not provide a meaningful benchmark for comparison. Plaintiffs respond that the contractual rate is not presumed to be reasonable under ERISA and that they have pleaded that the recordkeeping fees far surpass the market rate for those services – in other words, they have pleaded a meaningful benchmark.

The court finds that plaintiffs have sufficiently alleged an imprudence claim based on excessive recordkeeping fees. As a preliminary matter, the contract between defendants and their recordkeepers – to which plaintiffs are not privy – cannot be used to defeat plaintiffs' claim at this stage. <u>Braden</u>, 588 F.3d at 598 ("If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer."). Plaintiffs allege that

the Plan has a large pool of participants and assets, that the
recordkeeping market is highly competitive, and that defendants
paid higher than reasonable recordkeeping fees despite their
market strength.  Moreover, the complaint alleges that superior or
comparable recordkeeper plans were available.  This court, and
others within the Eighth Circuit, have found similar pleadings
sufficient to survive a motion to dismiss.  See, e.g., Morin v.
Essentia Health, No. 16-CV-4397, 2017 WL 4083133, at *12 (D. Minn.
Sept. 14, 2017), report and recommendation adopted, No. CV 16-
4397, 2017 WL 4876281 (D. Minn. Oct. 27, 2017); Wildman v. Am.
Century Servs., LLC, 237 F. Supp. 3d 902, 915 (W.D. Mo. 2017).
Plaintiffs thus may proceed with the breach of prudence claim under
the theory of excessive recordkeeping fees.

### 3.   Duty of Loyalty

Plaintiffs next allege that defendants breached their duty of
loyalty by allowing Financial Engines to pay Alight - the Plan's
recordkeeper - millions of dollars collected from participants for
services unrelated to recordkeeping.  Defendants argue, first,
that this claim fails because plaintiffs do not plead facts that
Financial Engines' revenue-sharing agreement with Alight is
unusual or inappropriate.  Defendant also argue that plaintiffs do

not plausibly plead that they contracted with Financial Engines with the goal of benefiting third-party recordkeepers.[10]

The court finds that plaintiffs have not sufficiently pleaded a breach of loyalty claim.  Duties of prudence and loyalty may be considered together or separately, and a duty of loyalty claim may be dismissed despite a viable duty of prudence claim.  Larson v. Allina Health Sys., 350 F. Supp. 3d 780, 804 (D. Minn. 2018).  The duty of loyalty requires fiduciaries to act "for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A).  "Perhaps the most fundamental duty of a [fiduciary] is that he must display ... complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons."  Pegram v. Herdrich, 530 U.S. 211, 224, (2000) (citations and internal quotation marks omitted).  It is important to note, however, "an act which has the effect of furthering the interests of a third party is fundamentally different from an act taken with that as a goal."  Larson, 350 F. Supp. 3d at 804 (quotations and citations omitted).  "The former may well not be

---

[10] Defendants also argue that the breach of loyalty claim is wholly derivative of the imprudent investment and recordkeeping fee claims.  Because these two claims survive the motion to dismiss, the court need not address this argument.

a violation of the duty of loyalty, ... [while] the latter may well be." Id. (citations and internal quotation marks omitted).

It is not enough for plaintiffs to allege that defendants' actions benefitted third-party recordkeepers; plaintiffs must plead that they did so with the goal of benefitting Financial Engines and Alight. See id. at 805 ("Plaintiffs have pled no facts showing that Defendants took an act to benefit themselves or [the plan's recordkeeper] with that benefit as the goal."). Plaintiffs have failed to do so here.

In sum, the court will allow the breach of fiduciary duty claim to proceed as set forth above.

### 4.   Failure to Monitor

Defendants lastly argue that Count II, based on the alleged failure to monitor fiduciaries, is wholly derivative of the breach of fiduciary duty claim and should also be dismissed. Because plaintiffs have sufficiently stated a claim for breach of fiduciary duty, the court finds that plaintiffs have also sufficiently pleaded the failure to monitor claim. See Wildman, 237 F. Supp. 3d at 915.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendants' motion to dismiss [ECF No. 21] is granted in part and denied in part as set forth above.


Dated: February 8, 2021

<div style="margin-left: 50%;">

s/David S. Doty
David S. Doty, Judge
United States District Court

</div>